DEPARTMENT OF TRANSPORTATION: RESPONSIBILITIES: CONSTRUCTION: Responsibilities of Commissioner of Transportation and Metropolitan Council in connection with construction of light rail transit project discussed: Minn. Stat. §§ 471.59, 473.399 - 473.3997.

229A
(Cr. ref. 1005, 1007, 1016)

June 30, 2000

Representative Jim Rhodes, Chairman
Governmental Operations and Veterans
Affairs Policy Committee
Minnesota House of Representatives
409 State Office Building, 100 Constitution Avenue
St. Paul, MN 55155-1206

Dear Chairman Rhodes:

Thank you for your letter in which you requested a formal opinion, pursuant to Minn. Stat. § 8.05, regarding the Hiawatha Light Rail Project Management Plan. Your letter was accompanied by a resolution, passed May 1, 2000, of the House Governmental Operations and Veterans Affairs Policy Committee.

Your letter and the resolution requested that this Office opine as to whether the Hiawatha Light Rail Project Management Plan, as submitted by the Metropolitan Council and approved by the Federal Transit Administration, conforms with Minnesota Statutes and the Legislature's intent for control of the project.

## FACTS

**I.   OVERVIEW OF PROJECT MANAGEMENT PLAN.**

A project management plan is a detailed document required by the Federal Transit Administration ("FTA") to be submitted by parties seeking grants from the FTA. The Hiawatha Light Rail Project Management Plan ("PMP") was submitted to the FTA by the Metropolitan Council, as the proposed grantee of the FTA funds.

The Attorney General's Office has obtained a copy of the PMP[1] dated April 14, 2000, a copy of which is attached as Exhibit 1. Chapter 2 of the PMP is entitled "Management Organization, Approach and Responsibilities." The Metropolitan Council has advised this Office that the PMP dated April 14, 2000 was submitted to the FTA and subsequently approved by it.

---

[1] The Attorney General's Office has received and reviewed only Chapter 2 of the PMP. Unless the context indicates otherwise, references herein to the PMP refer to Chapter 2 of the PMP.

The PMP sets forth a detailed description of "the scope of the [light rail transit] project implementation during preliminary engineering, final design, construction startup, and revenue services." PMP ¶2.01. The PMP states that its focus is on "a description of adequate staff organization, complete with well-defined reporting relationships, statements and functional responsibilities, job descriptions and job qualifications and...[a] description of organizational structures, management skills, and staffing levels required throughout the construction phase" of the light rail transit project. PMP ¶2.01.

In outlining responsibilities for the project, the PMP states as follows:

> The project blends the strengths of the Metropolitan Council, the Minnesota Department of Transportation, the Metropolitan Airports Commission, and other project partners. The Metropolitan Council is the Federal grantee, and is in charge of the project. Mn/DOT is responsible for designing and constructing the project, and the Metropolitan Airports Commission is responsible for construction of the tunnel and airport station.

PMP ¶2.04.1.

The following describes the respective responsibilities and authority of the Metropolitan Council and the Department of Transportation as described in the PMP.

## II.     RESPONSIBILITIES OF DEPARTMENT OF TRANSPORTATION

The PMP states that "as delineated in the state's enabling legislation (Minn. Stat. §§ 473.399-473.3998), the Minnesota Department of Transportation, acting through its Commissioner, has primary responsibility for the design and construction of the project." PMP ¶2.04.4.2. However, the PMP also states that the Department of Transportation's role in the project is to serve as an "agent" of the Met Council. PMP ¶2.01.

Responsibilities of the Department of Transportation are specifically set forth in the PMP. Those include the following:

- Preliminary Design Plan
- Design Management
- Bases of Design
- Procurement
- Preliminary Engineering
- Soils Borings
- Aesthetic Design Guidelines
- Environmental Services
- Design/Build Contract Faultation
- Station Design
- Utility Relocation
- Design/Build Civil Contract

- — RFP, Phase I
- — Roster of Design/Build Firms
- — Design/Build Team Contracts for Proposals
- — RFP, Phase II
- — Selection of Design Build Contractor
- — Design/Build Contract
- — Oversight of Design/Build Contractor

- Manage Design/Build Contract

  - — Quality Assurance
  - — Quality Control
  - — Document Control
  - — Materials Testing
  - — Change Management
  - — Cost Control
  - — Schedule Control
  - — Construction Oversight
  - — Risk Management

PMP ¶2.04.4.2. The above provisions of the PMP appear to indicate that the responsibility for designing and building the project rests with the Department of Transportation.

III. RESPONSIBILITIES OF THE METROPOLITAN COUNCIL

The PMP recognizes that the Metropolitan Council is designated by state law as the operator of the completed light rail system. PMP ¶2.04.4.1. The PMP also identifies the Metropolitan Council as the Federal Transit Administration grantee for the project. PMP ¶2.04.4.1.

With respect to specific responsibilities, the PMP states that the Metropolitan Council is the final decision maker in all aspects of the project. PMP ¶2.04.4.1. Indeed, one of the responsibilities of the Metropolitan Council is to "approve design and construction activities" for the project. PMP ¶2.04.4.1. The PMP also identifies the Metropolitan Council as the "lead agency" for both design and build and program management contracts. In addition, the PMP states that the Council approves construction contracts. PMP ¶2.05.1 and ¶2.05.2.2.

The coordination of the project is the responsibility of the Project Management Consultant. PMP ¶2.05.1. The Project Management Consultant's mission is to "achieve the performance, schedule and budget objectives of designing and constructing the Hiawatha Light Rail Transit Project." The Project Management Consultant reports to the Metropolitan Council. PMP ¶2.05.1.

To assist the Project Management Consultant, the chair of the Metropolitan Council and the Commissioner of the Department of Transportation created the Hiawatha Project Office ("HPO"). PMP ¶2.05.2. The function of the HPO, as set forth in the PMP, is as follows:

The HPO provides advice from the participating entities relative to the Commissioner's responsibility under a 1992 Minnesota State Statute, as amended in 1998 and 1999 (Minnesota Statute 473.99-473.3998), to design and construct the Hiawatha Light Rail Transit System.

PMP ¶2.05.2. It is not clear from the PMP to whom the HPO provides advice. However, it appears that such advice is provided to the Program Management Consultant (PMP ¶2.05.2) who, as noted above, reports to the Met Council.

The HPO is divided into units. PMP ¶2.05.2. Two of those units, the Office of Project Director and Design/Build Program Management, are relevant to this discussion and are described below.

The Project Director Office consists of a Project Director, Senior Department of Transportation and Metropolitan Council representatives and program managers and staff. PMP ¶2.05.2.2. The Project Director manages all departments within HPO including Design Build Program Management, Finance and Administration, Public Relations, Operations and Maintenance and Planning and Environment. PMP ¶2.05.2. The Project Director reports to the Met Council and is specifically accountable to the Metropolitan Council for the Design and Construction of the Project. PMP ¶2.05.2.2. Among the Project Director's principal responsibilities are the following:

- Prepare Hiawatha Light Rail Design and Construction Project Plan for approval-- Project definition, implementation approaches, schedule, budget.

- Prepare direct contract formation and administration process for construction contracts, service contracts and master agreements (e.g. with utilities, municipalities, etc.) for Metropolitan Council approval.

- Interface with contractors and other third parties as required for progress of the project.

- Manage principles of design, construction, commissioning and payments for work and services.

PMP ¶2.05.2.2

The Design/Build Program Management Unit of HPO "provides the expertise, procedures and staff resources to manage the Hiawatha Light Rail Transit Design Build contract procurement and administration for the Metropolitan Council." PMP ¶2.05.2.4. The Design Build Program Management Unit reports to the Project Director and receives policy, administrative and technical direction from and through the Project Director and guidance on

issues from the Design and Construction Committee.[2] PMP ¶2.05.2.4. The Design/Build Program Management Unit manages the Design Build Contractor selection process and administers the selected design build contractor from inception through contract close out. PMP ¶2.05.2.4. The responsibilities of the Design/Build Program Management Unit include the following:

- Develop and maintain Design/Build Program Master Budget and Cost Estimate
- Develop and maintain Design/Build Program Master Schedule
- Procure and administer design build contractor
- Establish Procurement Standards
- Establish Design Standards
- Establish Construction Specifications
- Execute Invoice Verifications and Payments

PMP ¶2.05.2.4.

The PMP states that the Design/Build Program Manager "was created in July 1998 to fulfill MnDOT's role of responsibility for the design and construction of the Light Rail Transit system as described in legislation." PMP ¶2.07.3.

It is not clear from the PMP to whom the Design/Build Program Manager reports. The description of the position is included in a section entitled "Minnesota Department of Transportation -- Metro Rail Office." PMP ¶2.07.3. However, the Design/Build Program Manager also appears to be a part of the Design Build Program Management Unit, which reports to the Project Director, who reports to the Metropolitan Council.

The Attorney General's Office was provided an organizational chart that schematically describes the project management relationships between the Metropolitan Council and other entities involved in the project. A copy of the organizational chart is attached as Exhibit 2. According to the chart, the Commissioner of the Department of Transportation reports directly to the Metropolitan Council. Design/Build Program Management staff report to the Metropolitan Council through the Project Director of HPO.

There is a dashed line running upwards from Design Build Program Management to the Department of Transportation. The significance and meaning of the dashed line are unknown.

---

[2] The Design and Construction Committee is responsible for the technical issues regarding the design and construction of the project. The Committee reports to the Design/Build Program Manager of HPO. PMP ¶2.06.2.

## LAW AND ANALYSIS

### I.   APPLICABLE STATE LAW

The statutes addressing the planning, design and construction of the Hiawatha Light Rail Project are set forth in Minn. Stat. §§ 473.399-473.3997 (the "Enabling Legislation"). Throughout these sections, the Metropolitan Council and the Department of Transportation have statutorily prescribed responsibilities in connection with the project.

With respect to the Metropolitan Council, Minn. Stat. § 473.399 requires the Council to adopt a plan to ensure that light rail transit facilities in the metropolitan area will be acquired, developed, owned and capable of operation in an efficient manner and in coordination with buses and other transportation modes. Regarding this plan, Minn. Stat. § 473.399, subd. 1(b) states as follows:

> The light rail transit plan or first phase of the plan required by this section must be adopted by the council before the commissioner of transportation may begin construction of light rail transit facilities. Following adoption of the plan, the commissioner of transportation shall act in conformity with the plan. The commissioner shall prepare or amend the final design plans as necessary to make the plans consistent with the light rail transit plan.

In connection with the preparation of design plans, Minn. Stat. § 473.3994, subd. 7 states as follows:

> Before proceeding with construction of a light rail transit facility, the commissioner [of transportation] must submit preliminary and final design plans to the metropolitan council. The council must review the plans for consistency with the council's development guide and approve the plans.

Minn. Stat. § 473.3993, subd. 3 goes on to state:

> The commissioner of transportation may use a design-build method of project development in construction for light rail transit. Notwithstanding any law to the contrary, the commissioner may award a design-build contract as a basis for request for proposals or requests for qualifications with bids.

In addition, in 1999, the Legislature appropriated to the Commissioner of Transportation $60 million "to match federal money to construct light rail transit in the Hiawatha Avenue corridor..." 1999 Session Laws, ch. 240, art. 1.

Upon completion of construction of light rail transit facilities and the commencement of revenue service using the facilities, the Metropolitan Council is directed to operate the facilities. Minn. Stat. § 473.4051.

## II.    ANALYSIS

Minnesota law reflects the desired goal of an integrated transportation system and, to that end, requires the Commissioner of Transportation and the Metropolitan Council to ensure that the light rail transit and commuter rail facilities are planned, designed and implemented to move commuters and transit users about the metropolitan area, and to ensure that rail transit lines will interface with each other and other transportation facilities and services.

The statutory roles of the Metropolitan Council and the Commissioner of Transportation with regard to the light rail transit project directly relate to one another. The Council has the authority for regional transit planning, preliminary and final light rail transit design approval and the operation of the light transit system. The Commissioner has the authority to plan, design and construct light rail transit facilities and use design-build in construction.

As noted above, various sections in the PMP indicate, consistent with the Enabling Legislation, that it is the responsibility of the Commissioner of Transportation to design and build the light rail transit system. These include statements acknowledging that the Department of Transportation has responsibility for the design and construction of the project (PMP ¶2.04.4.2) and the inclusion in the detailed listing of Department responsibilities the duties "design management," the "design/build civil contract" and the management of the design/build contract (PMP ¶2.04.4.2). However, other sections of the PMP appear inconsistent with those sections to the extent they indicate that the Metropolitan Council is directly or indirectly responsible for the design and construction of the project. These include the statement that the Department of Transportation's role in the project is to serve as an "agent" of the Metropolitan Council (PMP ¶2.01); the statement that the Metropolitan Council is the "lead agency" for design and build contracts (PMP 2.04.4.1); the fact that the Project Manager, whose duties include achieving the performance, schedule and budget objectives of designing and constructing the project, reports directly to the Metropolitan Council (PMP ¶2.05.1); and the accountability of the Design/Build Program Management Unit to the Metropolitan Council. (PMP ¶2.05.2.4).[3]

On April 13, 2000, the law firm of Dorsey & Whitney provided to the Metropolitan Council a legal opinion that the allocation of responsibilities and control between the Met Council and the Commissioner as set forth in the PMP is authorized by applicable state law (the "DW Opinion"). A copy of the DW Opinion is attached as Exhibit 3.

---

[3] The PMP dated April 14, 2000 which was reviewed by the Attorney General's Office is a redlined, updated version of a PMP dated March, 2000. Interestingly, the March, 2000 and prior versions of the PMP indicated that the Design/Build Program Management Unit managed the design/build contract for the *Department of Transportation*. The words "Department of Transportation" are stricken in the April 14, 2000 version and the words "Metropolitan Council" are inserted. (PMP ¶2.05.2.4) Similar redlined changes are contained elsewhere in the PMP.

The DW Opinion states that while the PMP "might appear to give the Council a greater role in the management and control of the design and construction process than may have been anticipated in the [Enabling Legislation] ..., that role is a reasonable and legitimate means of implementing the final decision-making authority" which Minnesota law grants to the Council.

Certain provisions in the PMP do appear to give the Metropolitan Council a greater role in the design and construction process than is set forth in Minnesota law. It is not clear, however, to what "final decision-making authority" of the Council the DW Opinion refers when it states that such authority has been granted to the Council and justifies the level of involvement of the Council which appears in the PMP. The DW Opinion provides no analysis or citation as to any specific statutory authority for the role of the Metropolitan Council as described in the PMP which, Dorsey & Whitney acknowledges, may be greater than that set forth in Minnesota law.

The DW Opinion also states that Minn. Stat. § 471.59 provides a basis for two or more governmental units, by agreement, to jointly and cooperatively exercise any power common to the units or any similar powers. The DW Opinion intimates that the joint powers statute applies to the light rail project. Indeed, the DW Opinion states:

> The agreement which will implement this structure also constitutes an agreement whereby the Council and MnDOT are jointly agreeing to exercise the powers granted to them by the Minnesota Legislature to accomplish the purposes set forth in the [Enabling Legislation] by the method set forth in the Project Management Plan.

The Attorney General's Office is not aware of any joint powers agreement that has been entered into between the Metropolitan Council and the Department of Transportation. As stated in the DW Opinion, Minn. Stat. § 471.59 provides the authority for two or more governmental units, by agreement, to jointly and cooperatively exercise any power *common* to both units or similar powers. Minn. Stat. § 471.59 was passed in 1943 and is based on a California statute. *Kaufman v. Swift Co.*, 20 NW2d 34, 37 (Minn. 1947). The purpose of the California law has been described as follows:

> The Act "mean[s] that cities may contract in effect to delegate to one of their number [or a separate agency created by the agreement] the exercise of a power or the performance of an act in behalf of all of them, and which each independently could have exercised or performed... It grants no new powers but merely sets up a new procedure for the exercise of existing powers."

*Los Angeles v. South Gate*, 57 Cal. Rptr.2d 878, 883 (1997), citing *The City of Oakland v. Williams* 15 Cal.2d 542, 549, 103 P.2d 168 (1940).

Here, not all of the statutorily prescribed powers and duties of the Metropolitan Council and the Department of Transportation are common. As a result, the Department of Transportation and the Metropolitan Council may enter into a cooperative agreement, but that

agreement must reserve to the Commissioner of Transportation the authority delegated to him by statute, such as the authority to award the design-build contract.

Statements in the PMP can be interpreted in more than one way with regard to the respective responsibilities of the Metropolitan Council and the Commissioner of Transportation pertaining to the design and construction of the light rail transit system. Accordingly, the determination as to whether the PMP complies with state law is dependent upon the PMP's interpretation and implementation by the Metropolitan Council and the Commissioner.[4] To the extent that the terms of the PMP are implemented in a manner consistent with the Enabling Legislation, it is the opinion of this Office that the PMP conforms with Minnesota law.

## CONCLUSION

The relevant legal standards and analysis regarding this matter may be summarized as follows:

1.      The Metropolitan Council has the authority to adopt a plan to ensure that light rail transit facilities are developed and owned in coordination with other means of transportation. Minn. Stat. § 473.399, subd. 1.

2.      The Commissioner of Transportation must submit preliminary and final design plans to the Metropolitan Council for approval. Minn. Stat. § 473.3994, subd. 7.

3.      The Commissioner of Transportation has the authority to award the design-build contract. Minn. Stat. § 473.3993, subd. 3.

4.      A governmental unit generally cannot delegate its discretionary authority to another unit unless that unit has common authority. Minn. Stat. § 471.59.

5.      The Commissioner of Transportation and the Metropolitan Council do not have common authority to design and construct the light rail transit system. The Commissioner of

---

[4] An initial PMP was apparently drafted and submitted to the FTA in September, 1999. However, the Attorney General's Office was not consulted or requested to review any part of the PMP until April 10, 2000 -- only 21 days before the May 1, 2000 deadline for FTA approval established by 1999 Minn. Laws, ch. 240, art. 1. On April 10th, the Attorney General's Office received a copy of Chapter 2 of the PMP which had been filed with the FTA on or about April 6, 2000. After it received and reviewed the PMP, this Office contacted representatives of the Metropolitan Council, the Department of Transportation, the Governor's Office and the FTA to express concerns about ambiguities in the PMP. On April 11, 2000, this Office requested Pat Riley, the Deputy Administrator of the FTA, to set up a meeting among State representatives and FTA attorneys to clarify and resolve ambiguities between the PMP and Minnesota law. The meeting was scheduled for April 13, 2000 in Chicago. After scheduling the meeting, the Metropolitan Council obtained the DW Opinion and cancelled the Chicago meeting. The Attorney General's Office has had no further involvement with the PMP or the FTA since that time.

Transportation has final authority to award the design-build contract. The Commissioner may consult with the Metropolitan Council, or any other party he deems appropriate, concerning the award of the contract.

6.  The Commissioner of Transportation is responsible for the construction of the project and must oversee the construction to ensure compliance with bid specifications.

7.  The Metropolitan Council may monitor the actions of the Commissioner of Transportation to ensure that the construction of the light rail facilities complies with the plans submitted by the Commissioner pursuant to Minn. Stat. § 473.3994, subd. 7.

The PMP is ambiguous and could have been clarified to clearly meet the parameters established by Minnesota law. Rather than clarifying these ambiguities with the FTA in April, 2000, the Metropolitan Council chose to obtain the DW Opinion and cancelled the meeting.[5] Because of the ambiguities, we believe that compliance with Minnesota law depends upon the manner in which the PMP is implemented. We believe that, as long as the Commissioner issues the RFP, selects the contractor, awards the contract and thereafter carries out the responsibilities of the governmental unit that has awarded the contract, the PMP is consistent with Minnesota law.

Very truly yours,


MIKE HATCH
Attorney General
State of Minnesota


Enclosures
AG: 387987,v. 01

---

[5] See footnote 4, *supra.*